No. 87-144

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

BUTTE COMMUNITY UNION, et al.,

        Plaintiffs and Respondents,

-vs-

DAVE LEWIS, Director of the Montana
Department of Social and Rehabilitation
Services,

        Defendant and Appellant.

---

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Russell Cater argued; Dal Smilie; Michael S. Becker,
        Legal Affairs, Dept. of SRS, Helena, Montana

    For Respondent:

        James H. Goetz argued, Bozeman, Montana
        Russell A. LaVigne & Michael Sinclair, Mont. Legal
        Services, Helena, Montana
        Robert L. Deschamps, III, County Attorney, Missoula,
        Montana
        Peggy Verburg, Missoula, Montana
        Jim Reynolds, Helena, Montana

---

Submitted: September 3, 1987

Decided: November 23, 1987

Filed: NOV 23 1987

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.


The members of the 1972 State Constitutional Convention embraced a bold concept. They provided in Art. XII, § 3(3) that:

> (3) The legislature shall provide such economic assistance and social and rehabilitative services as may be necessary for those inhabitants who, by reason of age, infirmities, or misfortune may have need for the aid of society.

From the viewpoint of hindsight, 15 years later, some may perceive Art. XII, § 3(3) as visionary and idealistic. The electors of this State, however, adopted the concept by ratifying the State Constitution on June 6, 1972, through Referendum No. 68.

Clearly and grammatically (by the use of the disjunctive "or") the State Constitution imposes upon the legislature a duty to provide necessary economic assistance to inhabitants who need societal aid by reason of three disparate conditions over which they have no control, age, infirmity, or misfortune.

In 1985, the legislature met, and purporting to comply with its duty under Art. XII, § 3(3), promulgated § 53-3-205(3), MCA, which excluded able-bodied persons under age 35 without dependent minor children from general relief assistance for basic necessities. The same legislature also adopted § 53-3-209(2), MCA, which declared able-bodied persons ages 35-49 without dependent minor children ineligible for general relief assistance for basic necessities for more than three months of general relief assistance beginning 60 days after they applied for general relief assistance.

These enactments of the 1985 legislature were overturned in the District Court and eventually came to this Court in Butte Community Union v. Lewis (Mont. 1986), 712 P.2d 1309, 43 St.Rep. 65. There, this Court, applying a middle-tier standard of review to equal protection guaranties under our state law, held that denying general assistance relief to members of the class of able-bodied persons solely on the basis of attained age did not pass constitutional muster.

The legislature met in a second special session in June, 1986. There the legislature adopted (Ch. 10, Laws of Montana, 2d Spec. Sess. (June, 1986)), amendments to § 53-3-205(3), MCA, to the effect that able-bodied persons without dependent minor children were not eligible for non-medical general relief assistance "except as provided in § 53-3-209"; and amended § 53-3-209(2), MCA, to provide that able-bodied persons without dependent minor children were eligible for no more than two months of nonmedical general relief assistance within a 12 month period. The legislature eliminated the 60 day waiting period.

These new provisions of the public assistance laws, denying general assistance relief to all able-bodied persons without dependent minor children for more than two months, were again challenged by Butte Community Union in the District Court, First Judicial District, Lewis and Clark County. In that court, the district judge, applying the middle-tier standard of review enunciated in the first Butte Community Union case, determined again that the new provisions failed to meet equal protection guaranties under our State Constitution and was thus unconstitutional. The district judge enjoined the enforcement of those provisions. The State through the Department of Social Rehabilitation Services (SRS) has appealed to this Court. On consideration, we sustain the District Court and affirm the decision.

There are other statutes to be considered in determining the validity of the general assistance programs for able-bodied persons. Able-bodied persons are those who are not infirm. Section 53-3-109(1), MCA. Able-bodied persons are not excluded from assistance for needed medical services. Section 53-3-205(3), MCA. Able-bodied persons receiving general public assistance, in counties with state-assumed welfare services must enroll in a structured job search and training program provided by the Department of Labor and Industry. Section 53-3-304(3), MCA; (Ch. 10, Laws of Montana, 1st Spec. Sess. (March, 1986)).

It is the position of SRS that able-bodied persons without dependent minor children are simply not misfortunate, because the legislature has defined them as not eligible to receive full cash general relief assistance. This contention springs from legislative findings adopted with the 1986 amendments to § 53-3-108, MCA, as follows:

> (2) The legislature finds that assistance under the general relief program should not be available to those persons who have either adequate income or resources of their own or who are able-bodied . . .

> (3) The legislature, in recognition of the need to expand the employment opportunities available to able-bodied persons who do not have dependent minor children, will provide two months of general relief so that such able-bodied persons may be eligible for the job readiness training authorized in 53-3-304(3), MCA. (Emphasis added.)

Of course, persons who have adequate income or resources of their own are not entitled to general assistance. They have no need for the aid of society. They are not misfortunate. The legislature, by its finding, has completely eliminated from economic assistance misfortunate able-bodied persons who may have need for the aid of society. The finding, therefore, is in flat opposition to Art. XII, §

3(3) of the Constitution, that all misfortunate persons who have need for the aid of society shall receive economic assistance through legislative action. The legislature cannot escape its constitutional duty by defining out the persons to whom the constitutional protection attaches. To allow such a finding to stand is tantamount to allowing the legislature to amend the Constitution by its own action, a power denied the legislature under the state Constitution. See Art. XIV, 1972 Mont. Const.

Art. XII, § 3(3) is not self-executing, and it needs the affirmative action of the legislature to be given effect. It is a duty not lightly to be omitted. As we pointed out in Jones v. Cooney (1928), 81 Mont. 340, 343-344, 263 P. 429, 430:

> The care of the state for its dependent classes is considered by all enlightened people as a measure of its civilization [citing authority] and provision for the proper care and treatment at public expense of the indigent sick and of those who for other reasons are unable to take care of themselves is said to be among the unquestioned objects of public duty [citing authority].
>
> The people of Montana gave recognition to this high moral obligation when they wrote into the constitution Section 5 of Article X, which provides: "The several counties of the state shall provide as may be prescribed by law for those inhabitants, who, by reason of age, infirmity or misfortune may have claims upon the sympathy and aid of society." As this constitutional declaration is not self-executing the measure of relief which may be furnished necessarily depends upon statutes enacted to carry out the benevolent purpose expressed.

Under the 1986 amendments to the public assistance statutes, eligible able-bodied persons with dependent minor children may receive nonmedical general assistance relief for basic necessities without limit (subject to job training

- 5 -

provisions). At the same time, eligible able-bodied persons without dependent minor children may receive the same assistance for but two months in any year (subject to the same job training provisions). Within the class of eligible able-bodied persons, therefore, not all are treated equally. The distinction is based solely on the presence or nonpresence of dependent minor children, without regard to whether able-bodied persons without dependent minor children may, through misfortune, "have need for the aid of society" for a greater period than two months in any year. On their face, the 1986 amendments do not meet the duty imposed on the legislature to provide for the misfortunate under Art. XII, § 3(3) of the Montana Constitution.

When this case was before the District Court, it determined that the case was controlled by the standard of review established in Butte Community Union v. Lewis (Mont. 1986), 712 P.2d 1309, 43 St.Rep. 65. The District Court further determined that in order for it to make a finding that the 1986 amendments were constitutional, the state must demonstrate two factors: (1) that the classification of welfare recipients on the basis of being able-bodied without dependent minor children was reasonable; and, (2) that the state's interest in classifying welfare recipients on the basis of being able-bodied without dependent minor children was more important than the people's interest in obtaining welfare benefits. The District Court further determined that both parts of the test must be met before the amendments could be declared constitutional. The District Court correctly interpreted Butte Community Union (BCU).

In applying the BCU test, the District Court turned first to whether the denial of benefits to able-bodied persons without dependent minor children was reasonable. It concluded that classifying persons based on being able-bodied

- 6 -

without dependent minor children was a broad generalization which under the BCU test can be interpreted as unreasonable and thus the state had failed to meet the first part of the BCU test. It saw no reason, therefore, to look to the second part of the BCU test and ordered the issuance of a permanent injunction prohibiting the SRS from implementing the provisions of the 1986 amendments to the public assistance statutes.

In its findings supporting its conclusions, the District Court found that no other programs were offered by the SRS or the state which would provide the affected individuals with assistance for shelter, transportation and personal needs; that 785 recipients of general relief assistance statewide would have their benefits terminated by January 1, 1987; that most of these would be in counties with state-assumed general relief assistance programs; that denying general assistance to the affected individuals would save the state $1.2 million in fiscal year 1987; that the position of the state was not that such able-bodied persons without dependent minor children were not in need of assistance, but that of all people served, they were of the lowest priority for general assistance.

The court determined as a fact that many able-bodied persons without dependent minor children who have previously been eligible for general assistance have significant identifiable barriers to employment. These include: (a) being out of the labor market for one year or more; (b) lack of skills and/or experience; (c) lack of transportation; (d) no address or telephone; (e) poor job hunting skills; (f) a high level of illiteracy; and, (g) alcoholism or chemical dependency. It determined that the job readiness program authorized in § 53-3-304(3), MCA, would not be effective for many of the recipients in that

they would not be "job ready" within the two month period. The District Court further determined that because of the state of Montana's economy not everyone affected by the termination of benefits would be able to find employment and that even though some jobs might be available, not all recipients would have the skills and qualifications required by those jobs. It further determined that not everyone who was affected by the termination of benefits would receive assistance from family, churches or other charitable organizations to meet minimal living needs.

SRS makes no attack on the sufficiency of the evidence to sustain the findings of the District Court. Rather, it argues that the classification between eligible able-bodied recipients is reasonable because of (1) factual distinctions between able-bodied and the infirm; (2) job search training and work program provided to able-bodied persons; (3) sufficient job openings that exist; (4) extensive services and benefits in conjunction with support from friends, relatives and charities; and, (5) factual distinctions between able-bodied persons with or without dependent minor children.

Each of the state's contentions is refuted by the findings of fact made by the District Court. In case after case, we have iterated the binding force of Rule 52(a), M.R.Civ.P., that findings of fact in nonjury cases made by District Courts may not be set aside by us unless clearly erroneous. In this case, the state does not maintain that the findings of the District Court are clearly erroneous or that they are not supported by the evidence. It merely contends that the District Court could have made different findings and reached a different conclusion.

The legislature acted in 1986 under a number of general assumptions that prove to be invalid. First, it found that

"the general relief program should not be available to those persons . . . who are able-bodied." (Emphasis added.) Section 53-3-108(2), MCA. Inconsistently, it allowed general relief assistance for basic necessities to able-bodied persons with dependent minor children. Section 53-3-205(2), MCA. The District Court found that 785 able-bodied persons without dependent minor children were eligible as of the date of hearing for general assistance relief for more than two months, but were excluded by reason of § 53-3-209(2), MCA.

The legislature assumed that allowing able-bodied persons without dependent minor children to be eligible for the job readiness training authorized in § 53-3-304(3), MCA, would make them employable. The District Court found that while some of the participants would be "job ready" within the two-month period, many would not.

The legislature assumed that sufficient job openings existed to absorb the number of able-bodied persons without dependent minor children. The District Court found that because of our economy, employment opportunity did not exist for all and that though some jobs might be available, not all recipients would have the skills or qualifications required for the job openings.

The legislature assumed that able-bodied persons without dependent minor children could rely on support from friends, relatives and charities and on other state programs including food stamps, medical services, and energy assistance. The District Court found that such additional programs did not provide affected individuals with assistance for shelter, transportation or personal needs and that not all could depend on family, churches or other charitable organizations to meet minimal living needs.

The District Court therefore concluded as a matter of law that classifying able-bodied persons without dependent

minor children as having no need for general relief assistance was a broad generalization which was arbitrary and unreasonable. The findings of the District Court demonstrate the unreasonableness of the broad general classification.

The State additionally argues that the action of the legislature in not excluding infirm persons from general relief assistance demonstrates the reasonableness of excluding able-bodied persons. Aside from the obvious fact that an infirm person is not "able-bodied," § 53-3-109(1), MCA, the legislature has a separate identifiable duty under Art. XII, § 3(3) to provide for the infirm needy. It is sophistry for counsel to claim reasonableness in that the legislature performed its duty with respect to one class of needy persons and thereby offset its duty to provide for another class of needy persons.

A final argument made by SRS is that it is reasonable to distinguish between able-bodied persons with dependent minor children, and those without such minor children. Here the argument runs that children are at risk and have little resources for their support and protection; that the protection of neglected and abused children is a primary mission of the state through another department; that the presence of children at home can be a barrier to employment in view of the costs of daycare, transportation and the possible unavailability of daycare; and that the legislature and the courts, through enactments or decisions, have recognized the risks to children and the reasonableness of distinguishing between them and adults in such programs as AFDC, provisions on child abuse and neglect and the likelihood of economic stress when there are more mouths to feed.

Of course, it is true that able-bodied persons with dependent minor children face different kinds of problems

from able-bodied persons without minor children. The difference in problems, however, does not obviate what the District Court in this case found: there are 785 eligible, able-bodied persons without minor children in need of the aid of society for the basic necessities of life. Again, the state is seeking to establish reasonableness because it has performed part of its duty under Art. XII, § 3(3). It has provided for eligible able-bodied persons with dependent minor children, but not for those without dependent minor children.

We, therefore, affirm the District Court. In doing so, we acknowledge the difficulty confronting the legislature in the two special sessions of 1986 to spread the available state funds over the needs of the state. The task was not easy, and sacrifices were required in nearly every state-funded activity. We know too, that hard times continue for the state. The legislature, in determining where sacrifices, are necessary, should regard "welfare benefits grounded in the constitution itself are deserving of great protection." Butte Community Union v. Lewis, 712 P.2d at 1314. The State may legitimately limit its expenditures for public assistance, public education or any other program even-handedly applied. It may not limit its expenditures by the expedient of eliminating classes of eligible individuals from public assistance without regard to their constitutionally grounded right to society's aid when needed, through misfortune, for the basic necessities of life. We do not hereby declare that inhabitants have a constitutional right to public assistance. We do declare that the legislature, in performing its duty under Art. XII, § 3(3), must not act arbitrarily between classes of entitled persons.

_____
/s/ John C. Sheehy
                    Justice

We Concur:

_____
              Chief Justice

/s/ John Conway Harrison

/s/ [signature]

/s/ William E. Hunt

_____

_____
               Justices

- 12 -

Mr. Justice L. C. Gulbrandson, specially concurring.

As in Butte Community Union v. Lewis (Mont. 1986), 712 P.2d 1309, 43 St.Rep. 65, I do not concur in the adoption of the described middle-tier standard of review. The first prong of that test requires a reasonable, non-arbitrary, classification of welfare recipients by the legislature. I agree with the adoption of that requirement as I perceive it to be an appropriate interpretation of the rational basis test. It is obvious that some courts in the past deferred to legislative classifications to the extent that the rational basis test was sometimes described as "toothless," and that may be the reason for the adoption, by the majority, of the middle-tier test. I do not agree with the adoption of the second prong of the test as stated because of the balancing decision to be required of this Court in future challenges to welfare classifications set by the Montana legislature. In my view, this Court, without particular expertise or competence, will, of necessity, be operating in the legislative arena in violation of the separation of powers doctrine, Article III § 1, Constitution of Montana.

Because this case was decided under only the first prong of the described middle-tier test, and the trial court determined that the classification was not reasonable, I concur in the result.

_____
Justice

Mr. Chief Justice J. A. Turnage and Mr. Justice R. C. McDonough join in the foregoing special concurrence of Justice L. C. Gulbrandson.

_____
Chief Justice

_____
Justice

13