No. 88-168

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

STATE OF MONTANA ex rel. MONTANANS FOR THE
PRESERVATION OF CITIZENS' RIGHTS; the
MONTANA STATE AFL-CIO; the WOMEN'S LAW
CAUCUS; TYNDALL COX; GARY HENRICKS and PAM
McCLAIN, individually and as next friend of
her minor daughter, FELICIA McCLAIN; and the
MONTANA TRIAL LAWYERS ASSOCIATION,

Plaintiffs and Relators,

-vs-

JIM WALTERMIRE, Secretary of State of the
State of Montana; GERALD WINE, Election
Administrator and Clerk and Recorder of
Gallatin County, Montana, individually and as
representative of the Class of All Election
Administrators and Clerk and Recorders of the
State of Montana; and the STATE OF MONTANA,

Defendants and Respondents.

ORIGINAL PROCEEDING

COUNSEL OF RECORD:

For Plaintiffs and Relators:

James H. Goetz and William L. Madden, Jr.; Goetz,
Madden and Dunn, P.C., Bozeman, Montana

For Defendants and Respondents:

Gregory L. Curtis, Chief Legal Counsel, Office of the
Secretary of State, Helena, Montana
Honorable Mike Greely, Attorney General, Helena, Montana
Joe R. Roberts, Assistant Attorney General
Walter S. Murfitt, Special Assistant Attorney General; Luxan
and Murfitt, Helena, Montana
A. Michael Salvagni, Gallatin County Attorney, Bozeman, MT

Submitted: April 19, 1988
Decided: April 21, 1988

Filed: APR 2 1 1988

Clerk

Mr. Justice John C. Sheehy delivered the Opinion and Order of the Court.

Based principally on the language of the state constitution itself, we determine in this original proceedings that proposed amendments to the state constitution through ballot Initiatives CI-30 and CI-27 would now be improper; and that state election officials charged with duties relating to further dissemination or publication of information relating to such initiatives, computing election results thereon, or canvassing and certifying the results thereof should be enjoined from so proceeding.

In the interim between the filing of the application in this proceedings and this writing, Secretary of State Jim Waltermire met an untimely death in a disastrous air accident. The members of this Court joined in the general outpouring of shock and grief at his death, and in the deep-felt expressions of sympathy and condolence to his aggrieved widow. We emphasize that by nothing here stated do we slight in the smallest degree his devotion to his public duty, nor his perception of those public duties.

The office of Secretary of State was being administered by the acting Secretary of State, and a successor Secretary to the late Mr. Waltermire has now been appointed. In usual circumstances, we could, out of decent respect, await the decision of the new Secretary to determine his stance in this matter before deciding the issues. Exigencies of time and expense compel us, however, to proceed quickly to a disposition of the cause.

Constitutional Initiative 30 (CI-30) has been the subject of earlier original proceedings before this Court. State of Montana ex rel. Montana Citizens for the

Preservation of Citizens' Rights, et al. v. Jim Waltermire, et al., No. 86-400 (Mont. 1986), 729 P.2d 1283, 43 St.Rep. 2192; State ex rel. Montana Citizens for the Preservation of Citizens' Rights, et al. v. Jim Waltermire, et al., Opinion and Order on Reconsideration (Mont. 1987), 738 P.2d 1255, 44 St.Rep. 913. A more detailed explanation of the language of CI-30 and the issues involved therein may be obtained from those volumes. It is enough to say here that CI-30 would amend Art. II, § 16 of the Montana Constitution.

Following the state general election of November 4, 1986 and canvass by the Board of State Canvassers, CI-30 was certified as having amended by initiative through passage by the electorate Art. II, § 16 of the state constitution. That certification of the initiative, and the election thereon, was voided by this Court on two principal grounds: (1) that an error had been made in the voter information pamphlet describing CI-30; and, (2) that the proposed amendment had not been published prior to the election as required by law. 738 P.2d at 1258, 1262.

On September 15, 1987, Gary S. Marbut, a registered elector of Montana, and the Secretary of State filed a joint affidavit entitled, "Submission of Controversy Without Action" in the District Court, Fourth Judicial District, Missoula County (Cause No. 67691). The District Court made findings of fact and conclusions of law dated November 6, 1987 refusing to order a further election on CI-30, and holding that the issues presented had been decided by this Court. See, 738 P.2d at 1271-1272. No appeal was taken from the order of the Missoula County District Court in cause no. 67691.

We must now refer to CI-27. The applicants in this case have not sought any relief relating to CI-27. We must

- 3 -

examine the purpose and history of CI-27, however, because it is pertinent to this proceeding.

CI-27 was a proposed constitutional initiative amendment which would add a new section to Art. VIII of the state constitution to be designated as § 15. The proposal would have provided that "no tax shall be imposed on any real or personal property. The establishment of a sales tax, or the increase in sales tax or personal income tax shall be accomplished only by referendum of the legislature with the approval of the majority of the qualified electors or initiative of the people."

CI-27 was attacked for its constitutionality in State of Montana ex rel. Montana School Board Association, et al. v. Jim Waltermire, Secretary of State, et al., No. 86-411 (Mont. 1986), 729 P.2d 1297, 43 St.Rep. 2198. This Court declined in that proceeding to consider the constitutionality of CI-27 and dismissed the action of the relators without prejudice. At the state general election of November 4, 1986, CI-27 was defeated by the electorate.

A separate action was later filed in the District Court of the Fourth Judicial District, Missoula County, before a different district judge, relating to CI-27. The complaintants were Emery M. Benson, Robert E. Godwin, Gary S. Marbut, et al., Freemen, v. "Montanans against CI-27" ex rel. Montana Association of Counties, Gordon Morris, et al., cause no. 65743. In their complaint, the complainants alleged that their constitutional rights regarding CI-27 had been violated because of the alleged faulty publication of the proposed initiative before the election. The Secretary of State was joined as a defendant in the action through an amendment to the original complaint. The District Court granted a summary judgment based on our decision in the CI-30 case. The District Court held that because of the lack of proper

publication of CI-27, the result of the election on CI-27 was void. In effect, the District Court said that by voiding the election on CI-27, that initiative had neither passed nor failed at the election, and that a certified version of the initiative had never been submitted properly for a vote. The District Court refused, though requested to do so, to order a new election on CI-27, pursuant to § 13-35-107, MCA, holding instead that the constitutional provision of Art. XIV, § 9, specifically required publication of the proposed amendment prior to the next "regular statewide election" and "at that election, the proposed amendment shall be submitted to the qualified electors for approval or rejection." The District Court then went on to hold as a conclusion of law that because CI-27 had not been published as required by law, the matter had not been expressly submitted as required by the state constitution and that it was the duty of the Secretary to publish the proposed constitutional amendment and submit it to the electorate at the next general election. Upon a subsequent motion to clarify the judgment, the District Court held that this could be either a general or a primary election.

The effect of the District Court's decision required also a summary judgment in favor of the other defendants in the cause, who, it had been alleged, were guilty of unfair election practices relating to CI-27. The holding of the court was that since the election itself was void, their activities respecting CI-27 could have no effect. Again, no appeal was taken from the decision of the District Court.

Acting on the District Court's opinion that the Secretary of State had a duty to resubmit CI-27 at the next statewide election, the Secretary informed the various clerks and recorders of the Montana counties that he intended to place both CI-30 and CI-27 as proposed constitutional

- 5 -

initiatives for decision on the Montana primary election ballot to be conducted on June 7, 1988. Since that announcement, the Secretary has taken such statutory steps as are required by law to place such initiatives on the primary election ballot, including necessary certifications, preparation of ballots and publications in various newspapers. Moreover, such additional steps will be taken by the office of the Secretary of State as may be necessary to present the initiatives to the electorate on primary election day. We are advised by the affidavit of the acting Secretary of State that voter information pamphlets are now being prepared and will be printed unless the election thereon is ordered stopped. Unless contracts for the printing of the voter information pamphlets are cancelled on or before April 22, 1988, printing costs will be unavoidably incurred in the sum of $12,483.27.

There are issues and counter-issues raised by the application of the relators here, and by the responses thereto from the defendants. The single determinative issue before us, however, may be stated thusly:

> Must a constitutional initiative, once approved or defeated at a regular statewide election, be resubmitted to the electorate at the next regular statewide election, where procedural defects of constitutional proportion caused the first election result thereon to be voided?

If the answer to the foregoing question is "yes," then, of course, the Secretary of State, as the state supervisor of elections and election officials has the duty to resubmit the initiative. If the answer is "no," then there is no corresponding duty incumbent upon the Secretary.

The answer, we think, lies in the language of the state constitution itself, which permits constitutional amendments by initiative. Art. XIV, § 9, provides:

- 6 -

Section 9. Amendment by Initiative. (1) The people may also propose constitutional amendments by initiative. Petitions including the full text of the proposed amendment shall be signed by at least 10 percent of the qualified electors of the state. That number shall include at least ten percent of the qualified electors in each of two-fifths of the legislative districts.

(2) The petitions shall be filed with the secretary of state. If the petitions are found to have been signed by the required number of electors, the secretary of state shall cause the amendment to be published as provided by law twice each month for two months previous to the next regular statewide election.

(3) At that election, the proposed amendment shall be submitted to the qualified electors for approval or rejection. If approved by a majority voting thereon, it shall be a part of the constitution effective on the first day of July following its approval, unless the amendment provides otherwise. (Emphasis added.)

We know that in this case, the petitions relating to CI-30 were filed in the office of the Secretary of State in 1986. On July 30, 1986, the Attorney General certified CI-30 to the Governor as a proposed constitutional initiative amendment. Before that time, the Secretary of State had certified to the Governor that the completed petitions for CI-30 had been officially filed in his office. Under subdivision (2) of § 9, Art. XIV, supra, the amendment was required to be published twice each month for two months previous to the next regular statewide election. The "next regular statewide election" in the case of CI-30, could only be the general election of November 4, 1986, which followed the filing of the petitions with the Secretary of State. Further, under subdivision (3) of § 9, Art. XIV, supra, it is "at that election [that] the proposed amendment shall be submitted to the qualified electors for approval or

rejection." If we were to construe § 9, Art. XIV, supra, to permit the resubmission of constitutional initiatives to the electorate "at succeeding elections," we would be inserting in the constitutional provision language not otherwise to be found there. No court in this state has such power.

Undoubtedly, the proponents of CI-30, in circulating and obtaining the petitions which led to the certification of the proposed amendment for the ballot, so construed the constitution. The petitions proposed "that the Secretary of State place the following constitutional amendment on the November 4, 1986 general election ballot." The signers of the petition themselves petitioned that the initiative be placed on the November 4, 1986, ballot and not at any other time.

In so holding, we are fully mindful that the people of this state in adopting the 1972 state constitution reserved unto themselves the exclusive right of governing themselves, and to alter or abolish the constitution whenever they deemed it necessary. (Art. II, § 2, 1972 Mont. Const.) We are concernedly aware of our judicial duty to preserve this right where possible. As the majority stated in State ex rel. Montana Citizens v. Waltermire, supra, 729 P.2d at 1285:

> The right retained by the people of Montana to change our constitution by initiative is unique. The people do not have such a right under the federal Constitution nor under many state constitutions. In Montana this right of constitutional change by initiative was first inserted in the 1972 constitution. As we stated in our opinion in State ex rel. Montana School Board Association v. Waltermire (1986), ___ Mont. ___, 729 P.2d 1297, we should decline to interfere with this right of constitutional change by initiative unless it appears to be absolutely essential. (Emphasis added.)

Essentiality is found when the constitution itself dictates the manner in which it may be amended. Constitutional provisions for amendment of their own force must be complied with:

> . . . Although the people of this State have retained the exclusive right of governing themselves, and the right to alter or abolish the constitution or form a government whenever they deem it necessary (Art. II, § 2), it is nonetheless true that as long as the State Constitution is in effect, the people may amend the constitution by initiative only in the manner provided by the constitution. "The sovereignty of the people is itself subject to those constitutional limitations which have been duly adopted and remain unrepealed." Hunter v. Erickson (1969), 393 U.S. 385, 392, 89 S.Ct. 557, 561, 21 L.Ed.2d 616.

State ex rel. Montana Citizens v. Waltermire, supra, 738 P.2d at 1258.

Grammatically, logically and legally, under our state constitution, constitutional amendment initiatives must be voted upon at the next regular statewide election following the filing of the petitions in the office of the Secretary of State. While the legislature may, as in this case, flesh out constitutional provisions by legislation implementing the constitutional requirements (as for example, the procedures for procuring signatures to petitions, the forms of petitions, the filing and certification of the same) such legislation must be in aid of, and not in conflict with the constitutionally provided procedures.

Under our holding here, it is not possible, as the defendants suggest, that the purposeful or negligent or capricious acts of state or county officials or other persons could in effect hold an initiative proposal "hostage" by some action or inaction. One may envision other omissions, defects or acts in the election or petition process but

- 9 -

unless they run afoul of specific constitutional requirements, they would be short of constitutional weight.

Because a resubmission of CI-30 to the electorate cannot be accomplished in a manner prescribed by Art. XIV, § 9, the Secretary of State has no duty to place the same on the upcoming primary ballot, and in fact is precluded from doing the same. Such injunctive orders as are necessary to preclude the resubmission of CI-30 at the next state primary election must necessarily issue here. Since our holding here is dispositive of the central issue, there is no need for us to discuss or dispose of other issues raised by the parties in this cause, except for the request of the plaintiffs for indemnification to the State by the Secretary of sums spent in connection with the resubmission of CI-30.

It is clear that the Secretary acted in proposing to resubmit CI-30 in accordance with the decision of the District Court in Missoula County in the litigation pertaining to CI-27. There, the District Court saw such a duty incumbent upon the Secretary of State, although it was not within the power of the District Court to set a special election. The Secretary contended here that since we had decided we had no such inherent power to order a special election (738 P.2d at 1272) and the District Court had decided it had no such power, the Secretary himself had a duty as executive officer to go forward with the initiative. It is clear that the Secretary acted for plausible and straightforward reasons. Although our holding here is adverse to what he proposed to do, there is no reason here to impose monetary sanctions upon the Secretary.

In all the foregoing discussion, we have concerned ourselves with the issue of placing initiative CI-30 for resubmission on the ballot. We do not have before us an issue raised by the parties relating to CI-27, although the

resubmission of CI-27 on the next statewide primary election is inextricably intertwined with the issues relating to the resubmission of CI-30. It would be judicially unreasonable, we conclude, to allow CI-27 to remain on the primary election ballot, knowing as we do with all possible certainty, that if an opponent of CI-27 came to this Court seeking injunctive relief, that relief would likewise be granted. The Secretary's successor has advised in his response and briefs to this Court in this proceeding that he will be governed as to CI-27 in the same manner as we decide the issues relating to CI-30. To assure the Secretary of our agreement in that regard, our injunctive orders in this case will and do prevent the resubmission of CI-27. That is simply judicial economy.

We remind all parties, proponents and opponents of the proposed constitutional amendments by initiative that nothing herein stated prevents the recirculation of initiative petitions pertaining to the same subjects in the manner provided by the state constitution and the laws in conformance therewith.

Gerald Wine, Election Administrator and Clerk and Recorder of Gallatin County, Montana, has moved this Court for an order dismissing the application insofar as it names him as the representative of the class of all election administrators and clerks and recorders of the State of Montana. His motion for dismissal will be granted as there is no need here to establish such a class in order to effectuate this Opinion.

WHEREFORE, HAVING CONSIDERED the complaint of the plaintiffs herein, the response of the Secretary of State thereto, the motion of respondent Gerald Wine and the response of the Attorney General of the State of Montana, and the memoranda and exhibits submitted by respective parties in

connection therewith, and finding expeditious action necessary in the premises,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1. The motion of Gerald Wine, Election Administrator and Clerk and Recorder of Gallatin County, Montana, for his dismissal from this action as a defendant/respondent be and the same is GRANTED.

2. A constitutional initiative once approved or defeated at a regular statewide election may not properly be resubmitted to the electorate at the next regular statewide election, where certain procedural defects of constitutional proportion have caused the first election result thereon to be voided.

3. It is meet and proper in the premises that this Court accept original jurisdiction of these proceedings in view of the exigencies of time and expense to the State of Montana in connection with the proposed resubmission of Initiatives CI-27 and CI-30. The Secretary of State of Montana, his incumbent successor or successors to his present term of office, his agents and employees are hereby mandatorily enjoined, restrained and prevented from taking, directly or indirectly, any further steps, actions or proceedings not heretofore already taken which are designed or intended to place on the election ballot, through local election officials or otherwise, Constitutional Initiative 30 (CI-30) and Constitutional Initiative 27 (CI-27) at the state primary election which will be held on June 7, 1988; that they and each of them are further enjoined, restrained and prevented from distributing to local election administrators or through them to voters, the voter information pamphlet which includes either CI-30 or CI-27 or to pay state monies for the preparation, printing or distribution of such voter information pamphlets relating to those initiatives, except

for those expenses for which the State is now contractually bound to pay; that the Secretary of State, his incumbent successor or successors and their agents and employees are encouraged, but not mandatorily enjoined, to take such further actions as may have the effect of removing from said primary election ballot any reference to initiatives CI-30 or CI-27; or, if that is not possible, to take such steps as may seem reasonably calculated to relieve any confusion of the electorate respecting said initiatives, including the incurring of reasonable expenses to that end; that if the actions heretofore taken by the Secretary are irrevocable, and the ballots presented to the electorate at said June 7, 1988 primary election contain provision for the vote of the electorate on either CI-30 or CI-27, the Secretary of State, his incumbent successor or successors, their agents and employees, are each hereby mandatorily enjoined, restrained and prevented from calculating or computing any election results as to passage or nonpassage by the electorate of either CI-30 or CI-27, and from certifying the same results in any manner, and from canvassing any election results relating to said initiatives and from certifying to any other state official the passage or nonpassage of said initiatives.

4.    The prayer for monetary sanctions or indemnification from the Secretary of State is hereby DENIED.

5.    No costs to either party.

6.    This Opinion and Order when signed by the majority of the members of this Court and filed in the office of the Clerk of this Court shall be and constitute and serve the office of a judgment and mandatory injunctive order, without the necessity of further judgment, orders or writs issued by this Court.  The Clerk of this Court shall forthwith serve certified copies of this Opinion and Order on counsel of record for each and all of the parties appearing herein by

- 13 -

telephonic communication and by ordinary mail and this Opinion and Order shall be in full force and effect as to each party herein from and after the receipt by his or her respective counsel of record of such telephonic communication or service by mail. The Clerk of this Court shall make and file in this cause her written certificate showing the manner, time, date and names of each counsel or firm served by her in accordance with this Order.

DATED this 21st day of April, 1988.

_John C. Sheehy_
Justice

We Concur:

_J. A. Turnage_
Chief Justice

_John Conway Harrison_

_____

_William E. Hunt, Sr._

_R. C. McDonough_
Justices

Mr. Justice L. C. Gulbrandson did not participate in this case.