No. 88-444

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

GEORGE HARPER, SUE FIFIELD, HUGH STANDLEY, JO LINDBERG,
MARCIA SCHREDER, FRANCIS MARONCELLI, CONSTITUTIONAL
DEFENSE CAMPAIGN AGAINST C-18, MONTANA LOW-INCOME
COALITION, et al,
          Plaintiffs and Appellants,

    -vs-

MIKE GREELY, ATTORNEY GENERAL, STATE OF MONTANA,
          Defendant and Cross-Appellant,
and
VERN BERTELSEN, SECRETARY OF STATE, STATE OF MONTANA,
          Defendant and Respondent.

---

APPEAL FROM:  District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                The Honorable Gordon R. Bennett, Judge presiding.

COUNSEL OF RECORD:
      For Appellant:
           Steven Bunch and Michael Sinclair, Mt. Legal Services,
           Helena, Montana
           James Goetz, Bozeman, Montana
           Robert Wood, Helena, Montana
           Andree LaRose, Montana Advocacy Program, Helena, Montana
      For Respondent:
           Hon. Mike Greely, Attorney General, Helena, Montana
           Joe R. Roberts and Kimberly Kradolfer, Assistant
           Attorneys General, Helena
      For Amicus Curiae:
           Gregory J. Petesch and Valencia Lane, Legislative
           Council, Helena, Montana
           Dennis Lopach, Montana Legal Defense Fund, Helena,
           Montana

---

Submitted on Briefs: September 9, 1988
Decided: October 12, 1988

*Ethel M. Harrison*
                Clerk

FILED
Filed:
'88 OCT 12 PM 4 25
CLERK
MONTANA SUPREME COURT

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

The appellants brought this action in the District Court, Lewis and Clark County, requesting that House Bill 637 (Ch. 343, 1987 Mont. Laws) be declared unconstitutional, unlawful, void and to enjoin the Secretary of State from placing the constitutional amendment proposed by the Bill on the November, 1988 ballot. The appellants further requested that the Secretary of State be enjoined from publishing the proposed amendment to the voter information pamphlet to be mailed to the Montana voters before the election.

Specifically, the appellants contest the sufficiency of the statement of purpose (title of HB 637) and the statements of implication to the "for" and "against" statements found in HB 637.

It is agreed that there are no factual issues in dispute and the matter is to be treated as a request for a declaratory judgment. The District Court dismissed the appellants' complaint on the grounds that there is no trace of authority for pre-election nullification of legislative referendum and absolutely no express authority for that court to review a legislatively proposed statement of implication. This appeal is then from that order dismissing the complaint. We agree with the District Court and its finding that there is no statutory authority for judicial pre-election nullification of a legislative referendum in this case.

The appellants and the Attorney General stipulated, and this Court ordered on August 22, 1988, that the record on appeal shall be the current District Court file supplemented by the Attorney General's revised explanatory statement and any information from the Secretary of State pertaining to county requests for abbreviated ballots, ballot printing

2

deadlines or other information related to preparation of the ballots.

Among the numerous parties involved in this case, those submitting briefs include the Montana Legal Services Association, Montana Advocacy Program, the Attorney General of the State of Montana, the Montana Legislative Council and the Montana Legal Defense Fund.

Over the fifteen years since adoption of Montana's 1972 Constitution, no provision in that Constitution has received more attention than Article XII, which relates to the economic assistance and social rehabilitative services to those in need. A number of case are indicative of the interest and the problems that have arisen because of this provision. Those cases include: Butte Community Union v. Lewis (Mont. 1987), 745 P.2d 1128, 44 St.Rep. 1911; State ex rel. Boese v. Waltermire (Mont. 1986), 730 P.2d 375, 43 St.Rep. 2156; State ex rel. Harper v. Waltermire (Mont. 1984), 691 P.2d 826, 41 St.Rep. 2212; State ex rel. Mont. Citizens for the Preservation of Citizens' Rights v. Waltermire (Mont. 1987), 729 P.2d 1283, 43 St.Rep. 2192; State ex rel. Mont. Citizens for the Preservation of Citizens' Rights v. Waltermire (Mont. 1987), 738 P.2d 1255, 44 St.Rep. 913; and State ex rel. Montanans for the Preservation of Citizens' Rights v. Waltermire (Mont. 1988), 757 P.2d 746, 45 St.Rep. 719.

This philosophy of caring for the needy is not new to Montana, Art. X, sec. 5 of our original Constitution of 1889, State Institutions and Public Buildings, was directed to this very problem. Art. X, sec. 5 Mont. Const (1889) read:

> The several counties of the state shall provide as may be prescribed by law for those inhabitants, who, by reason of age, infirmity or misfortune, may have claims upon the sympathy and aid of society.

3

That section and the numerous cases interpreting it served this state for over eighty years through depressed times, including the Great Depression of the 1930s. It was not until Montana's 1972 Constitutional Convention met that a new philosophy of caring for those in need evolved in this state. The new article, Art. XII, sec. 3, again is directed at institutions and assistance. Section 3(3) states the philosophy of the 1972 Constitution:

> (3) The legislature shall provide such economic assistance and social and rehabilitative services as may be necessary for those inhabitants who, by reasons of age, infirmities, or misfortune may have need for the aid of society.

From this subsection comes the understandings and misunderstandings of the people of this state as to whether this section guarantees a constitutional right to public assistance for the citizens of this state. In Butte Community Union v. Lewis (Mont. 1986), 712 P.2d 1309, 1312, 43 St.Rep. 65, 68, Mr. Justice Morrison writing for the majority noted:

> There is no constitutional right to welfare within the Montana Constitution's Declaration of Rights. Further, the right to welfare is not a right upon which constitutionally guaranteed rights depend. In fact, welfare is more properly characterized as a benefit. Since welfare is not a fundamental right, strict scrutiny does not apply and the State need show something less than a compelling state interest in order to limit that right.

It should be noted that in this opinion Mr. Justice Sheehy, while specially concurring, stated:

> I do not wish to be bound by the statement in the majority opinion that fundamental rights under the Montana

4

> Constitution must be found within the
> Declaration of Rights, Art. II. The
> Article holds itself open to unenumerated
> rights which may not be denied to the
> people.

Butte Community Union, 712 P.2d at 1314, 43 St.Rep. at 72.

In a later case, Butte Community Union v. Lewis (Mont. 1987), 745 P.2d 1128, 44 St.Rep. 1911, authored by Mr. Justice Sheehy, we affirmed the district court's finding unconstitutional a law passed by the Legislature, noting:

> The legislature, in determining where
> sacrifices, are necessary, should regard
> "welfare benefits grounded in the consti-
> tution itself are deserving of great
> protection." Butte Community Union v.
> Lewis, 712 P.2d at 1314. The State may
> legitimately limit its expenditures for
> public assistance, public education or
> any other program even-handedly applied.
> It may not limit its expenditures by the
> expedient of eliminating classes of
> eligible individuals from public
> assistance without regard to their
> constitutionally grounded right to
> society's aid when needed, through
> misfortune, for the basic necessities of
> life. We do not hereby declare that
> inhabitants have a constitutional right
> to public assistance. We do declare that
> the legislature, in performing its duty
> under Art. XII, § 3(3), must not act
> arbitrarily between classes of entitled
> persons.

Butte Community Union, 745 P.2d at 1133.

It is clear from this background it was the inability of the Legislature to write an act which would pass constitutional muster which led to its attempts to control the expenditures and the operations of the welfare programs.

In 1987, the 50th Legislature of the State of Montana adopted a proposed amendment to the Constitution, House Bill 637 (Ch. 343, 1987 Mont. Laws). This legislation refers to

5

the voters of Montana a proposed amendment to Art. XII, sec. 3, Mont. Const. This House Bill was enacted under the provisions of Art. XIV, sec. 8, Mont. Const., which provides that a proposed constitutional amendment may be proposed by any member of the Legislature and that if it is adopted by an affirmative roll call vote of two-thirds of all members thereof, whether one or both bodies, the proposed amendment "shall be submitted to the qualified electors at the next general election." This bill passed by a vote of 70 to 30 in the House and 33 to 17 in the Senate, thereby exceeding the supermajority requirement by three votes. Thereafter, House Bill 637 was designated Constitutional Referendum No. 18 [C-18] by the Secretary of State's Office, and is scheduled to be placed on the general election ballot for presentation to the Montana voters on November 8, 1988. As previously noted, we are asked to remove this referendum.

The appellants present the issue regarding the ballot title and statements of implication (the "for" and "against" statements) which will appear on the ballot, alleging they are untrue, misleading and unconstitutional. Section 13-27-501(3), MCA, provides that the ballot title for the legislative referendum proposing to amend the Constitution is to be the title of the legislative proposal itself. The title which will appear on the ballot reads as follows:

> AN ACT TO SUBMIT TO THE QUALIFIED ELECTORS OF MONTANA AN AMENDMENT TO ARTICLE XII, SECTION 3, OF THE MONTANA CONSTITUTION TO ALLOW THE LEGISLATURE GREATER DISCRETION IN PROVIDING ECONOMIC ASSISTANCE AND SOCIAL AND REHABILITATIVE SERVICES TO THOSE IN NEED; AND PROVIDING AN EFFECTIVE DATE.

The statements of implication from HB 637, reads as follows:

▱ FOR allowing the legislature

6

greater discretion to determine the eligibility, duration, and level of economic assistance and social services to those in need.

☐ AGAINST allowing the legislature greater discretion to determine the eligibility, duration, and level of economic assistance and social services to those in need.

It is important to note that this proposed amendment to the Constitution followed the provisions of Art. XIV, sec 8. Section 8 provides:

Amendment by legislative referendum. Amendments to this constitution may be proposed by any member of the legislature. If adopted by an affirmative roll call vote of two-thirds of all the members thereof, whether one or more bodies, the proposed amendment shall be submitted to the qualified electors at the next general election. If approved by a majority of the electors voting thereon, the amendment shall become a part of this constitution on the first day of July after certification of the election returns unless the amendment provides otherwise.

Section 9 provides for amendment by initiative:

(1) The people may also propose constitutional amendments by initiative. Petitions including the full text of the proposed amendment shall be signed by at least ten percent of the qualified electors of the state. That number shall include at least ten percent of the qualified electors in each of two-fifths of the legislative districts. (2) The petitions shall be filed with the secretary of state. If the petitions are found to have been signed by the required number of electors, the secretary of state shall cause the amendment to be published as provided by law twice each month for two months previous to the next

7

regular state-wide election. (3) At that election, the proposed amendment shall be submitted to the qualified electors for approval or rejection. If approved by the majority voting thereon, it shall become a part of the constitution effective the first day of July following its approval, unless the amendment provides otherwise.

The principal issue in this litigation concerns the ballot title and the statements of implication ("for" and "against") which appear on the ballot. Section 13-27-501(3), MCA, provides that the ballot title for the initiative referendum proposing to amend the Constitution is the title of the legislation itself. The title herein to be voted upon is the same title as the legislative act, exactly as used in HB 637 when introduced into the legislative process. We note throughout the legislative history of this Bill there were committee hearings, debates, and discussions concerning the merits of the proposed constitutional change, and there were no amendments, or even proposed amendments to the title. It emerged from the legislative process in exactly the same fashion it was entered. The words of the statement of implication were provided for in that legislation and have previously been noted. Throughout the committee hearings, debates and discussions in the legislative process concerning the merits of the constitutional change, neither the plaintiffs' testimony at the hearings nor any member of the Legislature offered any amendments concerning the title or ballot language throughout the legislative history of HB 637.

The appellants strenuously argue that the statutory standard which applies to both the initiative and referendum begun by petition, should equally apply to constitutional referenda originating from the Legislature. They argue that § 13-27-312(4), MCA, controls. That section states:

8

> The statement of purpose and the statements of implication must express the true and impartial explanation of the proposed ballot issue in plain, easily understood language and may not be arguments or written so as to create prejudice for or against the measure.

We are called upon to answer the question of what standard is to be applied to this legislative referendum. Because we find that the legislative referendum is a product of the Legislature and is passed in the form of a bill, its title should be examined according to the same standard applied to other legislation. If it results in greater deference being given to the ballot language which derives from the legislation rather than the petition, then that is appropriate due to the differences between the two sources. This distinction has been noted by this Court in State ex rel. Montana Citizens for the Preservation of Citizens' Rights v. Waltermire (Mont. 1987), 738 P.2d 1255, 1263, 44 St.Rep. 913, 923-924, where Mr. Justice Sheehy, writing for the majority, noted:

> There is evident wisdom in what the constitutional framers provided with respect to publication where initiatives are concerned. In the other two cases, that of convention and of legislative referenda, the proposed amendments are carefully worked over by contending parties whose governmental business at the time is to construct either a constitution or propose amendments to it. In the case of an initiative by the people, not enough adverse input occurs to justify the conclusion that a careful study has been made of the proposed amendement prior to its submission.

Article V, sec. 11(3) of the Montana Constitution states in pertinent part: "Each bill . . . shall contain only one subject, clearly expressed in its title." In State ex

rel. Wenzel v. Murray (1978), 178 Mont. 441, 585 P.2d 633, the opponents to a ballot initiative argued that the ballot title and statements of implication were unfair. They urged this Court to require that the language of the title and statements of implication clearly express the subject of the proposal. In determining what the title should reflect, this Court held it would not look beyond the terms of the initiative itself: "We therefore examine the title of the Initiative based upon the provisions of the Initiative itself." Wenzel, 585 P.2d at 637. This Court further stated that we would use the rules of construction delineated in two previous Montana cases to determine whether ballot language would meet the constitutional standard provided for in Art. V, sec. 11 Mont. Const.

One of the cases relied on in Wenzel is State v. McKinney (1904), 29 Mont. 375, 74 P. 1095, which set forth five principles for the construction of the titles by Montana courts:

> First. The purposes of this constitutional provision are to prevent the legislature from the enactment of laws surreptitiously; to prevent "logrolling" legislation; to give to the people general notice of the character of proposed legislation, so they may not be misled; to give all interested an opportunity to appear before committees of the legislature and be heard upon the advisability of the proposed legislation; to advise members of the legislature of the character of the proposed legislation, and give each an opportunity to intelligently watch the course of the proposed Bill; to guard against fraud in legislation, and against false and deceptive titles. These purposes have been so plainly announced by this court in numerous opinions that a statement of the rule and a citation of cases would seem sufficient. (Citations omitted.)

10

Second. While all the provisions of the constitution are "mandatory and prohibitory" (Art. III, Sec. 29), yet the courts, bearing in mind that the legislature is a co-ordinate [sic] branch of the government and that its action, if fair, should be sustained, have given this section of the constitution a liberal construction, so as to not interfere with or impede proper legislative functions. (Citations omitted.)

Third. The legislature is the judge, to a great extent, at least, of the title which it will prefix to a Bill; and the court has no right to hold a title void because, in its opinion, a better one might have been used. (Citations omitted.)

Fourth. The title is generally sufficient if the body of the Act treats only, directly or indirectly, of the subjects mentioned in the title, and of other subjects germane thereto, or of matters in furtherance of or necessary to accomplish the general objects of the Bill, as mentioned in the title. Details need not be mentioned. The title need not contain a complete list of all matters covered by the Act. (Citations omitted.)

Fifth. If the court, after an application of all these principles, is still in doubt as to the constitutionality of the Bill, it should sustain the Act. (Citations omitted.)

McKinney, 29 Mont. at 380-382, 74 P. at 1096. Numerous cases have clearly followed the rationale of Wenzel.

In applying the constitutional requirement of "clearly expressing the subject" in the title, and employing the rules of construction developed under case law, the ballot title in question here is legally sufficient. With the background of the legislative hearings and a vote by two-thirds of the

11

members of the Legislature, we conclude that they understood the issue and voted accordingly. Specific reference is made in the title to Art. XII, sec. 3, Mont. Const., and that the subject matter involves the provision of economic assistance and social and rehabilitative services to those in need. The explanation of the effect of the proposal is left to the Attorney General's explanatory statement which is given each voter the time of the election.

Two years ago, on three separate occasions, we refused to intervene in the initiative process prior to submission of the initiatives to the voters of Montana. Recognizing that these cases involved the initiative rather than the referendum process, they are yet applicable to the present case and should be considered.

Art. II, sec. 1 and 2, Mont. Const. (1972), read:

> Section 1. Popular sovereignty. All political power is vested in and derived from the people. All government of right originates with the people, is founded upon their will only, and is instituted solely for the good of the whole.

> Section 2. Self-government. The people have the exclusive right of governing themselves as a free, sovereign, and independent state. They may alter or abolish the constitution and form of government whenever they deem it necessary.

The initiative and referendum process enable the people to peacefully accomplish the goals of these two sections of our constitution by allowing important issues to be placed before the people for a popular vote. To deny the right to vote would thwart these provisions.

As we have noted, there are important distinctions between the constitutional amendments proposed through the

12

initiative process (by the people) and constitutional amendments proposed through the referendum process (by the legislature). Our reasoning in refusing to intervene in the initiative process prior to the vote of the people is applicable in this case. In fact, such reasoning has greater weight in relation to the referendum because of the safeguards already built into the referendum process. While the appellants cite precedent in which this Court granted pre-election review and enjoined an election, we distinguish these cases. In State ex rel. Steen v. Murray (1964), 144 Mont. 61, 394 P.2d 761, the challenged initiative was unconstitutional on its face. In State ex rel. Harper v. Waltermire (Mont. 1984), 691 P.2d 826, 41 St.Rep. 2212, the challenge to the initiative went to the text of the initiative rather than to its title.

In State ex rel. Boese v. Waltermire (Mont. 1986), 730 P.2d 375, 43 St.Rep. 2156, this Court was asked to declare the Milk Decontrol Initiative, I-104, void and invalid and to enjoin the Secretary of State from allowing it to appear on the November ballot. The petitioner challenged the initiative on the grounds that the title was defective in several ways. We refused to exercise jurisdiction to grant pre-election judicial review because we found the petitioner had failed to comply with the statutory procedures for challenging the titles of initiatives. As this Court stated in Boese, 730 P.2d at 378, 43 St.Rep. at 2160:

> We conclude that to effectively protect and preserve the right which Montanans have reserved to themselves to change the laws of this State through the initiative process, pre-election judicial review should not be routinely conducted. We hold that the petitioner has failed to demonstrate any reason to allow him to sidestep the procedural requirements of § 13-27-316(2), MCA.

13

Here, the appellants have not alleged that HB 637 is unconstitutional on its face. Appellants have not challenged the text of the referendum, only the title. As in Boese, we decline to intervene in a referendum process prior to a vote by the people on this constitutionally passed legislative referendum.

We held in State ex rel. Montana Citizens for the Preservation of Citizens' Rights v. Waltermire (Mont. 1986), 729 P.2d 1283, 1285, that:

> The right retained by the people of Montana to change our Constitution by initiative is unique. The people do not have such a right under the federal Constitution nor under many state constitutions. In Montana this right of constitutional change by initiative was first inserted in the 1972 Constitution. As we stated in our opinion in State ex rel. Mont. School Board Ass'n. v. Waltermire [(Mont. 1986), 729 P.2d 1297, 43 St.Rep. 2198], we should decline to interfere with this right of constitutional change by initiative unless it appears to be absolutely essential.

The District Court recognized both the inability and the inappropriateness of the removal of this legislative referendum from the ballot and said in its opinion and order:

> The next question is as to the remedy. Two remedial actions would seem to be available: nullification, as prayed for by the plaintiffs, or judicial amendment, a fallback position of defendants. A combination of proper judicial restraint and deference to the legislature would commend neither. More importantly, there is a dearth of statutory authority for either action.
>
> There is not a trace of statutory authority for pre-election nullification of a legislative referendum. The reason is obvious. A referendum is not a single

14

> act, it is a process. That process is
> not complete until the electorate has
> spoken. . .

We further note that there is a strong presumption in favor of the constitutionality of legislative enactments. T & W Chevrolet v. Darvial (1982), 196 Mont. 287, 641 P.2d 1368, where we noted the party attacking a legislative enactment has a heavy burden of proving a violation of fundamental law. If a doubt exists, it is to be resolved in favor of the legislation. Reeves v. Ille Elec. Co. (1976), 170 Mont. 104, 551 P.2d 647; In re estate of Kujath (1976), 169 Mont. 128, 545 P.2d 662; Bd. of Regents v. Judge (1975), 168 Mont. 433, 543 P.2d 1323.

In conclusion, we find that the ballot language and the abbreviated form complained of by the appellants is not legally deficient. While the language may not be the best conceivable statement, it does not appear purposely misleading, and does identify the measure on the ballot so that a Montana voter, drawing on both official and unofficial sources of information and education, will exercise his or her political judgment.

The District Court's order that appellants' complaint be dismissed is affirmed.

Justice

We concur:

Chief Justice

15

_____

_____
R. C. McDonough

_____

_____
Justices

16

Mr. Justice John C. Sheehy, dissenting:

I dissent and would take jurisdiction to remove this shabby referendum from the ballot.

I begin by agreeing with the District Court judge that this referendum is flagrantly deceitful. Its true intent, to deprive this Court of our constitutional basis for rebuffing the legislature's discriminatory acts, is trickily masked in self-effacing language: ". . . to allow the legislature greater discretion in providing economic assistance and social and rehabilitative services to those is need." (Emphasis added.) The legislature does not intend to "provide;" it intends to "eliminate."

Greater discretion? The legislature now has absolute discretion to determine the eligibility, duration and levels of aid to the needy. The only limitation upon its discretion is its constitutional duty to avoid invidious discrimination between members of the same needy classes. Butte Community Union v. Lewis (Mont. 1987), 745 P.2d 1128, 44 St.Rep 1911. The legislature, unwilling to assume the burden of acting constitutionally, wants the voters to remove the constitution.

Under the present constitution, the aged, the infirm, the unlucky, who without fault need the aid of society, must be given economic assistance by the legislature. Art. XII, § 3(3), 1972 Mont. Const. The legislature wants to get rid of that "must" but it does not want to tell the voters directly. Instead, the legislature proposes a referendum with its true intent couched in vague and illusory wording.

For the purposes of history, I set out here the form of the constitutional amendment as it will be submitted to the

17

electors. The Attorney General's Explanatory Statement will not appear on at least 67 percent of the state ballots. The county clerks of enough counties have requested permission to omit the Attorney General's Explanatory Statement because of lack of space on the ballot or machines. The constitutional amendment, therefore, will be presented to a great majority of the voters as follows:

CONSTITUTIONAL AMENDMENT NO. 18

---

AN AMENDMENT TO THE CONSTITUTION PROPOSED BY THE LEGISLATURE

---

AN ACT TO SUBMIT TO THE QUALIFIED ELECTORS OF MONTANA AN AMENDMENT TO ARTICLE XII, SECTION 3, OF THE MONTANA CONSTITUTION TO ALLOW THE LEGISLATURE GREATER DISCRETION IN PROVIDING ECONOMIC ASSISTANCE AND SOCIAL AND REHABILITATION SERVICES TO THOSE IN NEED; AND PROVIDING AN EFFECTIVE DATE.

[ ] FOR allowing the legislature greater discretion to determine the eligibility, duration, and level of economic assistance and social services to those in need.

[ ] AGAINST allowing the legislature greater discretion to determine the eligibility, duration, and level of economic assistance and social services to those in need.

---

---

Where in the ballot are the aged informed that their present group right to state aid, if needy, is stripped away by the ballot issue, and their lot cast to the whim of the legislators? They are not informed.

Where in the ballot are the sick, the crippled, the infirm told that their present group right to state aid, if needy, will be gone with the wind? They are not told.

18

Where in the ballot does it state that a Montanan's present group right to state aid in case of faultless poverty will be lost? It is not stated.

In the face of such deceit, this Court should condemn the referendum, and take it off the ballot for at least these reasons:

(1) By hiding its true purpose, the referendum prevents the free exercise by Montana voters of their right of suffrage. (Art. II, § 13, 1972 Mont. Const.)

(2) By hiding its true purpose, the referendum prevents the public right of opportunity to participate in the operation of state agencies. (Art. II, § 8, 1972 Mont. Const.)

(3) By hiding its true purpose, the referendum deprives the public of its right to examine public documents. (Art. II, § 9, 1972 Mont. Const.)

(4) By hiding its true purpose, the referendum deprives the public of its right to pursue life's basic necessities. (Art. II, § 3, 1972 Mont. Const.)

(5) By hiding its true purpose, the referendum deprives the needy aged, infirm and misfortunate persons of due process of law. (Art. II, § 17, 1972 Mont. Const.)

Because of the foregoing failings, the voters will not be given an opportunity to exercise their franchise in a knowing, conscientious manner. In Burgan and Walker v. State Highway Commission (1943), 114 Mont. 459, 137 P.2d 663, this Court enjoined a referendum before the election because of its evident constitutional deficiencies. That situation exists here. Our judicial duty is to enjoin or prevent the submission of this mendacity to the people.

_____
Justice

Mr. Justice William E. Hunt, Sr., joins in the foregoing dissent of Mr. Justice Sheehy.

_____
Justice