STATE OF MONTANA EX REL. ROBIN HATCH, PLAINTIFF
AND RELATOR, v. FRANK MURRAY, SECRETARY OF STATE OF
THE STATE OF MONTANA, DEFENDANT AND RESPONDENT.

No. 12842.
Submitted Aug. 30, 1974.
Decided Aug. 30, 1974.
Opinion Sept. 16, 1974.
Rehearing Denied Sept. 16, 1974.
526 P.2d 1369.

The Honorable E. Gardner Brownlee, Alfred B. Coate, and
LeRoy L. McKinnon, District Judges, sat for Mr. Justices
Castles, Daly, and Haswell, respectively.

Donald A. Garrity, argued, Helena, Cannon & Garrity, Hel-
ena, James W. Zion, argued, Great Falls, Emile Loring, Great
Falls, appeared for appellant.

Robert L. Woodahl, Atty. Gen., Helena, J. Michael Young
argued, Asst. Atty. Gen., Helena, Thomas A. Budewitz ap-
peared, Asst. Atty. Gen., Helena, for respondent.

## ORDER

PER CURIAM:

This is an original proceeding which seeks to restrain and enjoin the Secretary of State of the State of Montana from submitting referendum No. 69 to the electorate at the general election to be held on November 5, 1974.

Because the Secretary of State must take certain proceedings under the law to implement the submission of referendum No. 69 the time element is very short and the Court upon the filing of the complaint herein contacted the Attorney General, counsel for the defendant and respondent Secretary of State, to see if the hearing might be expedited. The Attorney General kindly consented to an immediate hearing and an order was entered setting the matter for an adversary hearing on Friday, August 30, 1974, at the hour of 10 a.m.

Such hearing has been held, briefs have been filed, oral arguments presented and the matter submitted for decision. Time is not available to prepare a full scale written opinion in this cause but the Court has decided the issue and the opinion will follow as soon as the same can be prepared.

It is ordered that Frank Murray, Secretary of State of the State of Montana and the defendant-respondent in this cause, be and he hereby is, restrained and enjoined from placing referendum No. 69 upon the ballot for the November 5, 1974, general election.

## OPINION

PER CURIAM:

Prior to August 23, 1974, there were filed in the office of Secretary of State Frank Murray approximately 16,880 signatures on referendum petitions requesting House Resolution No. 4, entitled "A JOINT RESOLUTION OF THE SENATE AND THE HOUSE OF REPRESENTATIVES OF THE STATE OF MONTANA RATIFYING THE PROPOSED AMEND-

MENT TO THE CONSTITUTION OF THE UNITED STATES RELATING TO EQUAL RIGHTS ON ACCOUNT OF SEX", passed by the second regular session of the 43rd legislature assembly of the State of Montana, be referred to the people of the state for their approval or rejection at the general election scheduled for November 5, 1974. On August 23, 1974, Murray duly notified Governor Thomas Judge that the requisite number of 15,980 qualified electors had signeed these petitions and that the referendum on House Resolution No. 4 would be placed on the November 5 ballot as Referendum No. 69.

Thereafter Robin Hatch, a citizen and resident of the State of Montana, brought this original proceeding seeking an injunction from this Court permanently restraining and enjoining Murray from taking any action to submit Referendum No. 69 to the Montana voters at the general election.

Because of the very short time left for Murray to properly submit Referendum No. 69 on the election ballot, an immediate hearing on the matter was arranged. After considering briefs and listening to oral arguments, this Court on August 30, 1974, issued an Order restraining and enjoining Murray from placing Referendum No. 69 upon the ballot for the November 5, 1974, general election. The purpose of the following opinion is to give that Order the explanation it deserves.

Questions concerning Hatch's standing to bring this action and the power of the Court to exercise jurisdiction over it were not pressed by Murray in order that the merits of the controversy could be timely reached.

The only issue is whether a joint resolution of the Montana legislature ratifying a proposed amendment to the United States Constitution may be referred to the people.

Our Order of August 30, 1974, was mandated by the case of Hawke v. Smith, 253 U.S. 221, 40 S.Ct. 495, 64 L.Ed. 871, which is strikingly similar to and dispositive of the present

controversy. In *Hawke* the Ohio legislature adopted a joint resolution ratifying the proposed Eighteenth Amendment to the United States Constitution. The Ohio Constitution specifically provided that ratification by the Ohio legislature of proposed amendments to the federal constitution was subject to referendum. A referendum was called for under this provision and the plaintiff sued in the Ohio State courts to enjoin the Ohio secretary of state from spending public money in printing ballots for submission of the referendum to the voters. The Ohio Supreme Court held that the referendum was proper.

This decision was reversed by the United States Supreme Court which found the disputed Ohio constitutional provision to be in direct conflict with Article V of the United States Constitution and therefore void. Article V provides:

"The Congress, whenever two-thirds of both houses shall deem it necessary, shall propose amendments to this Constitution, or, on the application of the Legislatures of two-thirds of the several states, shall call a convention for proposing amendments, which, in either case, shall be valid to all intents and purposes, as part of this Constitution, when ratified by the Legislatures of three-fourths of the several states, or by conventions in three-fourths thereof, as the one or the other mode of ratification may be proposed by the Congress * * *."

The Court stated, 253 U.S. at 227, 40 S.Ct. at 497, that:

"The Fifth Article is a grant of authority by the people to Congress. The determination of the method of ratification is the exercise of a national power specifically granted by the Constitution; that power is conferred upon Congress, and is limited to two methods, by action of the Legislatures of three-fourths of the states, or conventions in like number of states. Dodge v. Woolsey, 18 How. 331, 348, 15 L.Ed. 401 [407]. The framers of the Constitution might have adopted a different method. Ratification might have been left to a vote of the people, or to some authority of government other than that selected. The language of the article is plain, and admits of

no doubt in its interpretation. It is not the function of courts or legislative bodies, national or state, to alter the method which the Constitution has fixed."

The Court further stated, 253 U.S. at 230, 40 S.Ct. at 498:

"It is true that the power to legislate in the enactment of the laws of a state is derived from the people of the state. But the power to ratify a proposed amendment to the federal Constitution has its source in the federal Constitution. The act of ratification by the state derives its authority from the federal Constitution to which the state and its people have alike assented."

*Hawke* was reaffirmed in the same term in the National Prohibition Cases, 253 U.S. 350, 386, 40 S.Ct. 486, 488, 64 L.Ed. 946:

"The referendum provisions of state Constitutions and statutes cannot be applied, consistently with the Constitution of the United States, in the ratification or rejection of amendments to it."

Ever since *Hawke* it has been clear that a state may not subject ratification by its legislature of a proposed amendment to the federal constitution to referendum nor may it otherwise limit its legislature in the exercise of its federal function of ratifying such amendments. See, for example, Leser v. Garnett, 258 U.S. 130, 42 S.Ct. 217, 66 L.Ed. 505, which struck down constitutional provisions of several states denying their legislatures power to ratify a women's amendment, and Trombetta v. State of Florida, 353 F.Supp. 575 (1973), which voided a section of the Florida Constitution prohibiting legislative action on any proposed amendment to the United States Constitution, unless a majority of the legislature had been elected after the proposed amendment had been submitted for ratification.

Submission of Referendum No. 69 to the Montana voters would therefore have been a useless act, since the voters can-

not constitutionally compel the legislature to rescind its ratification of the proposed Equal Rights Amendment.

Mary Doubek, individually and for all members of a class known as Montana Citizens to Rescind E.R.A., has petitioned this Court for a rehearing and for permission to intervene as a party in this action and has also filed a complaint in intervention.

The thrust of all these documents is to ask this Court to rule contrary to opinions of the United States Supreme Court. Whether she or the office of the Attorney General of Montana ask for that relief is immaterial, this Court is bound by the United States Supreme Court decisions and must follow them.

The application for a rehearing is therefore denied, the petition to be allowed to intervene is likewise denied, and the complaint in intervention is ordered stricken.

The HONORABLE LeROY L. McKINNON, District Judge, sat for MR. JUSTICE HASWELL.

The HONORABLE ALFRED B. COATE, District Judge, sat for MR. JUSTICE DALY.

The HONORABLE E. GARDNER BROWNLEE, District Judge, sat for MR. JUSTICE CASTLES.