No. 84-391

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

STATE OF MONTANA, ex rel., STEVE HARPER,
ROBERT C. WALTMIRE, BRAD BELKE, and
COMMON CAUSE OF MONTANA, a State affiliate
of common cause,

                    Plaintiffs and Relators,

        -vs-

JIM WALTERMIRE, Secretary of State, State
of Montana,

                    Defendant and Respondent,
        and

MONTANANS FOR A BALANCED FEDERAL BUDGET
COMMITTEE,

                    Real party in Interest.


ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

        For Plaintiff/Relator:

        McGarvey, Lence & Heberling; Jon L. Heberling argued,
        Kalispell, Montana
        Jonathan Motl, Helena, Montana

        For Respondent:

        Mike Greely, Attorney General, Helena, Montana
        Alan D. Robertson, Helena, Montana
        Luxan & Murfitt; Walter Murfitt argued for Secretary of
        State, Helena, Montana
        Ted Lympus argued for Respondent Hindman, Kalispell, Montana

        For Real Party in Interest:

        John W. Larson argued, Helena, Montana
        Maxwell Miller argued, Denver, Colorado

        For Amicus Curiae:

        Harrison, Loendorf & Poston; Jerome Loendorf for National
        Taxpayers, Helena, Montana
        John T. Noonan, Jr. for Sam Ervin, Jr. & Taxpayers Foundation,
        Berkeley, California

                    Submitted: October 1, 1984
                      Decided: November 28, 1984

Filed: NOV 28 1984

                    Ethel M. Harrison
        _____
                        Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Plaintiffs filed an application for writ of injunction on September 11, 1984, seeking an order finding Constitutional Initiative No. 23 void and unconstitutional. Plaintiffs further sought to enjoin the Secretary of State and other election officials from certifying a ballot and delivering a voter pamphlet containing this ballot initiative. After hearing arguments of the parties on September 28, 1984, the requested relief was granted by this Court in an order dated October 1, 1984. Application for a stay of this order was denied by the United States Supreme Court October 10, 1984. Montanans for a Balanced Fed. Budget Comm. v. Harper (1984), _____ U.S. _____, 105 S.Ct. 13, ___ L.Ed.2d _____. This opinion sets forth this Court's reasoning on the original October 1, 1984, order.

Initiative No. 23 is a measure that, if adopted by the voters, would have directed the Legislature to apply to Congress pursuant to Article V of the United States Constitution to call a convention to consider a federal balanced budget amendment. On July 13, 1984, the Secretary of State certified that the requisite number of signatures had been submitted to qualify the initiative for the November ballot. The statement of purpose drafted to accompany the initiative on the ballot reads as follows:

> "This initiative would amend the Montana Constitution to direct the 1985 Legislature to adopt a resolution requesting Congress to call a constitutional convention for the purpose of adopting a balanced budget amendment. The initiative would also require that if the resolution is not adopted within ninety legislative days, the Legislature shall remain in session without compensation to its members, and with no recess in excess of three calendar days, until the resolution

2

is adopted. The initiative would become void if the convention is not limited to the subject of a balanced budget or if Congress itself proposes a similar amendment."

Initiative No. 23 by form is a constitutional amendment. By the language of the initiative, the Secretary of State is directed to forward copies of the amendment to the Secretary of the United States Senate, the Clerk of the United States House of Representatives, and officers of the state legislatures after ninety days of deliberation by the Montana Legislature regardless of whether that body had adopted the resolution.

Plaintiffs and relators contend that Initiative No. 23 is beyond the power of initiative granted the people by the Montana Constitution and is facially invalid under the United States Constitution. We agree.

I

The initiative process in the Montana Constitution was designed to enact laws, Art. III, Sec. 4, 1972 Mont. Const.; state constitutional amendments, Art. XIV, Sec. 9, 1972 Mont. Const.; and to initiate a call for a state constitutional convention, Art. XIV, Sec. 2, 1972 Mont. Const. Although Initiative No. 23 purports to be a constitutional amendment, it is nothing but a legislative resolution. The initiative power within the Montana Constitution does not include the power to enact a legislative resolution, particularly a resolution making an Article V application for a federal constitutional convention.

The only attribute that the balanced budget initiative shares with a bona fide constitutional amendment initiative is its form and label. The subject matter of the initiative

3

reveals its true nature. It is a directive to the Legislature to take a specific action: to adopt a resolution. Its import and purpose is to create this resolution. To accomplish this goal, the constitutional amendment form is used as a vehicle to transport language that reads as a resolution and alternatively as an act. The measure contains references to "the resolution required," "the following resolution," and "this act."

Labeling a document a constitutional amendment does not make it one. See, Stovall v. Gartrell (Ky. 1960), 332 S.W.2d 256. This simple truth is particularly appropriate here where the initiative at issue would create a transient amendment for a specialized purpose. A temporary initiative measure is not a part of the permanent fundamental law of a state and should not be submitted under the guise of a constitutional amendment. See Buchanan v. Kirkpatrick (Mo. 1981), 615 S.W.2d 6; Livermove v. Waite (1894), 102 Cal. 113, 36 P. 424.

Initiative No. 23, unmasked, is an attempt to create a legislative resolution by direct vote of the people. A constitutional amendment facade does not enlarge the initiative power granted the people by the Montana Constitution to include the power of legislative resolution. The electorate cannot circumvent their Constitution by indirectly doing that which cannot be done directly.

We have invalidated this ballot measure recognizing that the initiative power should be broadly construed to maintain the maximum power in the people. Chouteau County v. Grossman (1977), 172 Mont. 373, 563 P.2d 1125. However, we cannot fail to recognize the independent legislative power vested in the legislature. Art. V, Sec. 1, 1972 Mont. Const.

4

The stricken ballot measure would compel the Legislature to reach a specific result under threat of confinement and no pay. Such coercion is repugnant to the basic tenets of our representative form of government guaranteed by the Montana Constitution.

The initiative is therefore invalid on these state grounds, entirely independent, separate and apart from federal constitutional infirmities to which we now turn.

II

Article V of the United States Constitution provides a procedure under which the federal constitution may be amended. In relevant part, Article V provides:

> "The congress, whenever two-thirds of both houses shall deem it necessary, shall propose amendments to this constitution, or, on the application of the legislatures of two-thirds of the several states, shall call a convention for proposing amendments, which, in either case, shall be valid to all intents and purposes, as part of this constitution, when ratified by the legislatures of three-fourths of the several states, or by conventions in three-fourths thereof, as the one or the other mode of ratification may be proposed by the congress;"

Thus, there are two methods by which amendments may be proposed: by vote of Congress or through a convention called by Congress on the application of two-thirds of the state legislatures. Proposed amendments become effective upon ratification by the state legislatures or state conventions. The ballot measure at issue seeks to direct the Montana Legislature to submit an application to Congress for a constitutional convention. The question becomes whether the people of Montana may properly dictate to the Legislature that such application be made. In other words, does the initiative

constitute a constitutionally permissible manner of initiating the Article V amendment process?

Resolution of this question involves interpretation of the Article V language: "on the application of the legislatures." The United States Supreme Court has not previously interpreted this exact clause. The Supreme Court has had the occasion to interpret the word "legislatures" for purposes of Article V and we find its opinions on the issue controlling.

A joint resolution of Congress was adopted in 1917 proposing the Eighteenth Amendment to the United States Constitution. The amendment proposed a prohibition on the sale and manufacture of alcohol and was submitted to the states for ratification. The Ohio Constitution provided that all proposed federal amendments be subject to a referendum vote of the people following ratification by the Ohio legislature. After the state legislature ratified the Eighteenth Amendment, it was placed on the ballot for approval. In a subsequent suit for injunctive relief, the Ohio Supreme Court found this referendum proper. The United States Supreme Court reversed the Ohio court in Hawke v. Smith (1920), 253 U.S. 221, 40 S.Ct. 495, 64 L.Ed. 871.

The Hawke opinion discussed the meaning of the word "legislatures" for purposes of Article V. The Court noted that the framers' intent was clear and that they consciously chose ratification by a representative body over other possible methods, including a vote by the people. The Court stated that use of "legislatures" within the ratification process called for "action by deliberative assemblages representative of the people. . . ." 253 U.S. at 227. The Court held that the Ohio constitutional requirement of referendum violated the Article V ratification process.

This Court followed the holding of Hawke in an analogous case, State ex rel. Hatch v. Murray (1974), 165 Mont. 90, 526 P.2d 1369. In Hatch we held that the Montana Legislature could not constitutionally subject its ratification of the proposed Equal Rights Amendment to a referendum vote of the people.

The discussion in Hawke of legislatures in the context of the amendment ratification clause of Article V is equally applicable to the application clause. There is no reason that the framers would have ascribed different meanings to the two instances in which they used the word "legislatures" within the same sentence of Article V. A legislature making an application to Congress for a constitutional convention under Article V must be a freely deliberating representative body.

The deliberative process must be unfettered by any limitations imposed by the people of the state. Leser v. Garnett (1922), 258 U.S. 130, 42 S.Ct. 217, 66 L.Ed. 505. After Congress proposed the Nineteenth Amendment giving women the right to vote, the people of the various states placed limitations in their state constitutions upon the power of their legislatures to ratify the amendment. In Leser, these limitations were struck down by the United States Supreme Court:

> ". . . [t]he function of a state legislature in ratifying a proposed amendment to the Federal Constitution, like the function of Congress in proposing the amendment, is a federal function derived from the Federal Constitution . . . it transcends any limitations sought to be imposed by the people of a State." 258 U.S. at 137. (Emphasis supplied.)

Again, we find the ratification language of the Court in Leser applicable to the present controversy where the people

7

of Montana through an initiative measure seek to compel their Legislature to make an application under the federal Article V amendment process.

Summarizing this discussion, we find that whenever a state legislature acts to amend the United States Constitution under Article V powers, the body must be a deliberative representative assemblage acting in the absence of any external restrictions or limitations. Initiative No. 23 is facially unconstitutional for precisely this reason. The measure attempts to direct and orchestrate the legislative application process in contravention of the plain language of Article V.

It has been suggested by the sponsors of Initiative No. 23 and real party in interest, Montanans for a Balanced Federal Budget Committee, that the initiative is a nonbinding recommendation to the Legislature and does not remove the application function from the Legislature as that body remains the final actor in the Article V process. We need only look to the wording of Initiative No. 23 and the precedent of Hawke and Leser to determine the merit of this argument.

The initiative states: "The people . . . adopt and direct the next regular legislative session to adopt the following resolution [making an application to Congress to call a convention] and submit the same to the Congress . . ." This is no less than an express directive from the people to the Legislature to take a specific action. Until this action is taken, the Legislature is kept in perpetual session. After ninety legislative days, no members may be compensated and no additional business may be considered. Under these constraints, any application made by the Legislature would violate the language and spirit of Article V as interpreted

by the United States Supreme Court in <u>Hawke</u> and <u>Leser</u>. Legislative deliberation cannot exist where the outcome is a predetermined specific action.

Recently the California Supreme Court considered the constitutionality of a balanced budget initiative strikingly similar to Initiative No. 23. Amer. Fed. of Labor-Congress v. March Fong Eu (1984), 36 Cal.3d 687, 206 Cal.Rptr. 89, 686 P.2d 609. This initiative was in the form of a law that would direct the California legislature to adopt a resolution making application to Congress for a constitutional convention. In striking the initiative from the ballot, the California court concluded:

> ". . . A rubber stamp legislature could not fulfill its function under article V of the Constitution.
>
> ". . . [A] state may not, by initiative or otherwise, compel its legislators to apply for a constitutional convention, or to refrain from such action. Under article V, the legislators must be free to vote their own considered judgment, being responsible to their constituents through the electoral process. . ." 686 P.2d at 622.

The framers of the United States Constitution could have provided the people, through direct vote, a role in the Article V application process. They chose instead to solely vest this power within deliberative bodies, the state legislatures. The people through initiative cannot affect the deliberative process. As Initiative No. 23 places significant constraints on the Montana Legislature it is facially unconstitutional under Article V.

Accordingly, the relief requested by plaintiffs and relators has been granted.

_____
Chief Justice

9

We concur:

_John Conway Harrison_

_(signature)_

_John C. Sheehy_

_(signature)_

Justices

Mr. Justice L. C. Gulbrandson dissenting.

I respectfully dissent.

_L. C. Gulbrandson_
Justice

Mr. Justice Daniel J. Shea specially concurs and will file a separate opinion later.