*239 OPINION AND ORDER
¶1 Petitioner Bernard J. Harrington in his individual capacity and as representative of the Coalition for Consumer Choice Against 1-164 (Harrington) and Petitioner Montana Consumer Finance Association (MCFA) (Collectively “Petitioners”) invoke this Court’s original jurisdiction to challenge the Attorney General’s legal sufficiency determination and ballot statements for Initiative No. 164 (1-164). We review the following issue:
¶2 Do the Attorney General’s ballot and fiscal statements comply with §13-27-312, MCA?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 1-164 seeks to cap interest rates for certain loans at an annual interest rate of 36 percent. Petitioners challenge the ballot statements and Attorney General’s legal sufficiency determination for 1-164 under § 13-27-316, MCA. Section 13-27-316, MCA, constitutes the “exclusive remedy” for such challenges. 1-164 would affect interest rates on certain lenders. Section 1 proposes a finding that some lenders are charging Montanans more than 400% interest annually. Section 2 would repeal exemptions on interest rate limits and usury provisions for deferred deposit lenders, title lenders, and consumer loan licensees. Section 3 would provide for penalties for violation of the initiative *240 under the Consumer Protection Act. Section 4 caps the finance charge on retail installment contracts at 36% annually. Section 5 caps the interest rates for pawnbrokers. Section 6 limits fees for deferred deposit loans to 36% annually and provides for allocation of attorneys fees. Section 7 caps the interest rate at 36% for title loans. Section 8 limits interest rates to 36% for “consumer loans,” a statutory term that excludes deferred deposit, title, mortgage backed loans, and loans by “regulated lenders.” Section 9 provides that the statutory amendments would take effect on January 1, 2011.
¶4 The Attorney General found that the proponents’ proposed ballot statement did not specify the type of loans subject to the limits and contained “potentially argumentative and misleading detail about federal legislation concerning military personnel and their families.” The Attorney General determined that the statements did not comply with the requirements of § 13-27-312, MCA, and redrafted the ballot statement. The Attorney General requested a fiscal note from the Budget Director. The fiscal note estimated a reduction in licensing and examination revenue of $189,900 per year, totaling $526,800 over the three year analysis period, and no impact to the General Fund. The Attorney General drafted the fiscal statement in accordance with the finding that there would be a fiscal impact if 1-164 were to become law. Section 13-27-312(3), MCA.
¶5 The Attorney General’s amended ballot statement reads as follows:
Statement of Purpose
Under Montana law, deferred deposit (payday) lenders may charge fees equaling one-fourth of the loan, which is the same as an annual interest rate of 300 percent for a 31 day loan or 650 percent for a 14-day loan. Title lenders may charge interest equaling one-fourth of the loan, which is the same as an annual interest rate of 300 percent for a 30 day loan. 1-164 reduces the interest, fees, and charges that payday, title, and retail installment lenders may charge to an annual interest rate of 36 percent. It prohibits businesses from structuring other transactions to avoid the rate limit.
Fiscal Statement
1-164 reduces the licenses and examination fee revenue paid to the State because certain lenders may not renew their licenses.
[] FOR reducing the annual interest, fees, and charges payday, title, and retail installment lenders may charge on loans to 36 percent.
*241 [] AGAINST reducing the annual interest, fees, and charges payday, title, and retail installment lenders may charge on loans to 36 percent.
¶6 The Secretary of State certified 1-164 in accordance with § 13-27-308, MCA, on July 19, 2010. Petitioners filed suit under § 13-27-316, MCA. Section 13-27-316(5), MCA, endows this Court with original jurisdiction to hear challenges to ballot statements and constitutes the “exclusive remedy” for such challenges. Both Harrington and MCFA challenged the ballot statements for failure to comply with the substantive requirements of § 13-27-312, MCA. Harrington argued that the statements of purpose and implication failed to “express a true and impartial explanation of the proposed measure in plain, easily understood language.” Harrington also challenged the fiscal statement under § 5-4-205, MCA. MCFA claims that the ballot statement for I-164 does not meet the requirements of § 13-27-312(4), MCA, because it fails to specifically mention “consumer loan licensees” in the statement of purpose. MCFA contends that, due to this omission, the statement does not constitute a “true and impartial explanation of the proposed ballot issue.” Section 13-27-312(4), MCA. MCFA argues that voters would be misled and thus precluded from casting an informed ballot. Harrington requested that this Court adopt an alternative ballot statement that Harrington provided. MCFA requested that this Court overturn the Attorney General’s legal sufficiency determination and, alternatively, that we strike the term “consumer loan licensee” from the text of the initiative. Nearly two weeks after filing his initial petition, Harrington filed with this Court a motion for referral to district court for development of the factual record under § 3-2-202, MCA.
JURISDICTION AND VENUE
¶7 This Court possesses original jurisdiction to review ballot statements for initiative measures and the Attorney General’s legal sufficiency determination in actions brought pursuant to § 13-27-316, MCA. Section 13-27-316, MCA, constitutes the sole remedy for such challenges.
DISCUSSION
¶8 Do the Attorney General’s ballot and fiscal statements comply with §13-27-312, MCA?
¶9 We must address as a threshold matter Harrington’s motion for referral to the district court pursuant to § 3-2-202, MCA. Harrington *242 did not raise issues of fact in his initial petition, and no issues of fact exist to preclude this Court from deciding Harrington’s petition. More importantly, § 3-2-202, MCA, does not apply to Harrington’s petition. Section 3-2-202(3)(b), MCA, requires that the parties to a proceeding under Subsection (3)(a) must “certify the absence of factual issues or stipulate to and file any factual record necessary” to this Court’s consideration of the challenge. That provision applies to the petitioner’s ballot statements for initiated measures and the Attorney General’s ballot statements for referred measures. Section 3-2-202(3)(a), MCA. Harrington’s petition challenges the Attorney General’s ballot statement for an initiated measure and therefore does not fall into either of the categories specified by § 3-2~202(a), MCA. Harrington’s petition likewise does not come within the ambit of the statute as a challenge under § 13-12-316, MCA, to the Attorney General’s legal sufficiency determination. The legal sufficiency determination applies only to “the statutory and constitutional requirements governing submission of the proposed issue to the electors.” Section 13-27-312(7), MCA. “Legal Sufficiency” does not encompass “consideration of the substantive legality of the issue if approved by the voters.” Id. Harrington’s petition raises only substantive legal arguments concerning the legality of the ballot statements and underlying initiative. We therefore deny Harrington’s motion for referral and proceed to analyze both petitioners’ claims under §§ 13-27-312 and - 316, MCA.
¶10 Ballot statements must “express the true and impartial explanation of the proposed ballot issue in plain, easily understood language and may not be arguments or so written as to create prejudice for or against the issue.” Section 13-27-312(4), MCA. We have refused to overturn the Attorney General’s version of a ballot statement, provided that the statement meets the statutory requirements. Citizens Right to Recall v. State, 2006 MT 192, ¶ 10, 333 Mont. 153, 142 P.3d 764. This practice reflects the rule followed in other jurisdictions that courts “do not sit as some kind of literary editorial board.” Shulte v. Long, 687 N.W.2d 495, 498 (S.D. 2004). Courts thus will not “invalidate a summary simply because they believe a better one could be written.” Burgess v. Miller, 654 P.2d 273, 276, n. 7 (Alaska 1982).
¶11 The Attorney General’s ballot statement meets the requirements of the statute so long as it employs “ordinary plain language, explains the general purpose of the issues submitted in language that is true and impartial, and [is] not argumentative or *243 likely to create prejudice either for or against the issue.” Stop Over Spending Mont. v. State, 2006 MT 178, ¶ 12, 333 Mont. 42, 139 P.3d 788. We review the Attorney General’s ballot statements solely for compliance with § 13-27-312, MCA. Citizens Right to Recall, ¶ 13. The statute does not grant petitioners “the right to the ballot statements of their choosing.” Id.
¶12 The Attorney General determined that “the application of a 36% annual interest rate to consumer loans is more straightforward and, based on the public comments received, less salient than the core payday, title, and retail installment issues.” The process of producing a 100 word purpose statement that constitutes a “true and impartial explanation” of the measure “involves a degree of discretion entrusted to the Attorney General by the Legislature that we will not overturn absent noncompliance with the statute.” Citizens Right to Recall, ¶ 18. We acknowledge that the statutory 100 word limit on statements of purpose will inevitably lead to the omission of some provisions that Petitioners would like to include. Citizens Right to Recall, ¶ 18. A complete description of every part of the measure cannot be included. Stop Over Spending Mont., ¶ 17.
¶13 Petitioners argue that the Attorney General’s statements of purpose and implication do not constitute a “true and impartial explanation” of what the measure would do because they identify specifically “deferred deposit lenders,” “title lenders,” and “retail installment lenders,” but not “consumer loan licensees.” Section 13-27-312(4), MCA. MCFA requests that we remedy this fault by striking the term “consumer loan licensees” from the body of the measure. Section 13-27-316, MCA, does not give this Court the authority to modify the text of a ballot initiative. The statute does provide, however, that “if this court decides that the ballot statements do not meet the requirements of 13-27-312, it may ... certify to the secretary of state a statement that the court determines will meet the requirements of 13-27-312, MCA.” Section 13-27-316(3)(c)(ii), MCA. We determine therefore that adding the term “consumer loan licensees” to the statements of purpose and implication and making other minor additions and stylistic changes will be the most effective remedy for the omission of which MCFA complains. The amended ballot statement shall read as follows:
Statement of Purpose
Under Montana law, deferred deposit (payday) lenders may charge fees equaling one-fourth of the loan, which, as an annual interest rate could range from 300 percent to 650 percent. Title *244 lenders may charge similar interest rates. 1-164 reduces the interest, fees, and charges that payday lenders, title lenders, retail installment lenders, and consumer loan licensees may charge to an annual interest rate of 36 percent. It prohibits businesses from structuring other transactions to avoid the rate limit. It also revises statutes applicable to pawn brokers and junk dealers.
Fiscal Statement
1-164 reduces the licenses and examination fee revenue paid to the State because certain lenders may not renew their licenses.
[] FOR reducing the annual interest, fees, and charges payday, title, and retail installment lenders and consumer loan licensees may charge on loans to 36 percent.
[] AGAINST reducing the annual interest, fees, and charges payday, title, and retail installment lenders and consumer loan licensees may charge on loans to 36 percent.
¶14 Harrington next claims that the Attorney General’s fiscal statement does not comply with the requirements of § 13-27-312, MCA, and that the fiscal statement is argumentative and creates prejudice. The statute requires that the Attorney General shall prepare a fiscal statement if the fiscal note indicates a fiscal impact. Section 13-27-312(3), MCA. The statement must be used on the petition and ballot. Id. The statute does not stipulate what information must be included in the fiscal statement. The Attorney General acted within his discretion in formulating the fiscal statement at issue here. The Attorney General’s fiscal statement accurately provides that 1-164 will reduce the license and examination fee revenue paid to the state “because certain lenders may not renew their licenses.”
¶15 Harrington claims also that the Attorney General failed to formulate the fiscal note and fiscal statement in accordance with the statutory provisions because the Budget Director failed to consult with the Department of Revenue. The Attorney General must order a fiscal note that estimates the effect on revenue if the proposed initiative will affect the State’s revenue, expenditures, or fiscal liability. Id. The fiscal note must estimate, where possible, the dollar amount of the increase or decrease in revenue or expenditures, costs, and long term financial effects. Section 5-4-205, MCA. The fiscal note serves as an objective analysis of the financial impacts of the legislation and may not comment or express an opinion upon the merits of the proposed legislation. Id. The Attorney General must prepare a fiscal statement if the fiscal note indicates that a fiscal impact will occur as a result of *245 the proposed legislation. The Attorney General’s fiscal statement must be included on the petition and on the ballot if the issue is placed on the ballot. Section 13-27-312(3), MCA.
¶16 The thrust of Harrington’s argument appears to be that the Department of Revenue constitutes an agency “affected by the ballot issue,” and therefore should have been consulted by the Budget Director pursuant to § 13-27-312(3), MCA. The Budget Director consulted with the Division of Banking and Finance in the Department of Administration. The fiscal note complies with the requirements of § 5-4-205, MCA, and the statute requires nothing more. Harrington requests that we include language as to the exact amount of revenue estimated to be lost and the volume of such loans processed in the state each year. This information falls outside the statutory requirements under these circumstances. The fact that the Attorney General failed to include this information in the fiscal statement “does not prevent a voter from casting ‘an intelligent and informed ballot.’” Citizens Right to Recall, ¶ 18.
¶17 Petitioners’ arguments as to prejudice are similarly unavailing. Ballot statements must “eschew advocacy-argument-for or against the proposal’s adoption.” Id., ¶ 20 (citing Fairness and Acct. in Ins. Reform v. Greene, 886 P.2d 1338 (Ariz. 1994)). Petitioners fail to point to specific provisions in either the statement of implication or the fiscal statement that violate this requirement.
¶18 Resolution of these matters has been unnecessarily complicated by the language of the revised statutes at issue. The intent of § 13-27-316, MCA, is to provide - via an original proceeding in this Court - the “sole remedy” for challenges to ballot statements or the Attorney General’s opinion as to legal sufficiency. The statute’s confused and internally contradictory language, however, threatens to frustrate the will of voters who have expressed their intent that a measure appear on the ballot. Section 13-27-316, MCA, applies to statements that have been approved by the Attorney General. Such statements, of necessity, have already been circulated for voter signatures. In particular, § 13-27-316(2), MCA, contemplates challenges to ballot statements “approved by the attorney general.” The statute then requires, however, that statements revised by this Court and certified to the secretary of state must be placed “on the petition for circulation and on the official ballot.” Section 13-27-316(3)(c)(ii), MCA (emphasis added). Statements that have been approved by the Attorney General have of necessity already completed the circulation process. Compliance with all provisions of subsection (3)(c)(ii) is thus rendered impossible in *246 cases such as the present when a party brings a challenge under § 13-27-316, MCA, mere weeks before the statement would be placed on the ballot. Notwithstanding this and other internal inconsistencies, we have attempted to apply the statute in accordance with the obvious legislative intent and with due consideration for the expressed will of Montana’s voters.
¶19 We decline Petitioners’ request to overrule the Attorney General’s legal sufficiency determination for 1-164, or to tamper with the text of the initiative itself. Citizens Right to Recall, ¶ 29. The Attorney General acted within his considerable discretion in drafting the ballot statements and fiscal statement for 1-164. We determine, however, that MCFA’s complaint as to the omission of the term “consumer loan licensees” from the statement of purpose is valid. We therefore certify to the Secretary of State the ballot statement set forth at ¶ 13, which we have determined will meet the requirements of § 13-27-312, MCA.
DATED this 17th day of August, 2010.
JUSTICES LEAPHART, COTTER and WHEAT concur.